## DARST v. COUNTY ELECTION BOARD OF CRAIG COUNTY.

No. 31925. Oct. 10, 1944.

Rehearing Denied Nov. 14, 1944.

*152 P. 2d 912.*

F. A. Darst and J. W. Bashore, both of Vinita, for plaintiff in error.

G. P. Fogle, County Atty., Craig County, Edw. H. Brady, Asst., and Frank L. Haymes, all of Vinita, for defendant in error.

HURST, J. F. A. Darst, plaintiff below, appeals from a judgment denying a writ of mandamus to compel the county election board of Craig county to place his name on the ballot for the November, 1944, general election as the Republican nominee for county attorney of Craig county.

On April 28, 1944, Darst filed with the county election board of Craig county his declaration as a Republican candidate for county attorney. In his declaration he stated he was registered as a Democrat but voted Republican. No other person filed as a Republican candidate for county attorney. Frank L. Haymes filed as a Democratic candidate for county attorney, and no other person filed as a Democratic candidate. In due time Haymes filed with the county election board a protest against the candidacy of Darst on the ground that he was registered Democrat and was not eligible to become a Republican candidate. On May 10, 1944, the county election board sustained the protest and made an order striking Darst's filing and directing that his name be not

printed on either the primary or general election ballot. On May 18, 1944, the chairman and secretary of the Republican county central committee filed a declaration with the county election board to the effect that Darst was the candidate of the Republican party for county attorney and was entitled to a certificate of nomination. · On July 13, 1944, Darst filed with the county election board a statement showing no expenditures in the primary campaign. On July 18, 1944, Darst filed this proceeding in mandamus. The issues were made up and the case was tried on July 28, 1944. At the trial it was agreed that Darst was registered as a Democrat and had voted in the Democratic primary in 1942. The district court held that since he was registered as a Democratic elector he was not a member of the Republican party, and was not eligible to become a candidate of that party, and that his filing was contrary to law.

The sole question argued by the parties is whether an elector, otherwise qualified, who is duly registered as a voter of one political party, is entitled to become a candidate of another political party. The question is one of law and is to be answered by a consideration of our statutes governing elections. The parties call our attention to 26 O. S. 1941 §§72, 83, 121, 122, 123, 162, 165, 165a, and 166, and 26 O. S. Supp. 1943 §233, S. L. 1943, p. 97, as having a bearing on the question.

Section 162 provides:

"Any qualified elector, as defined in the Constitution and laws of the State of Oklahoma, who is a member of a political party, and who is now and has been affiliated with such legally recognized party at whose hands he seeks the nomination, shall have his name printed on the official ballot of his party for an office to which he is eligible in any primary election, upon filing with the proper officer, within the time provided by law, a Notification and Declaration of candidacy."

Was Darst a "member of", or "affiliated with", the Republican party as those terms are used in section 162? We look to all the provisions of the election statutes for an answer to this question.

Section 72 provides:

"It shall be the duty of every qualified elector in this state to register as an elector under the provisions of this act, and no elector shall be permitted to vote at any election unless he shall register as herein provided, and no elector shall be permitted to vote in any primary election of any political party except of the political party of which his registration certificate shows him to be a member."

Under this section the party membership of a registered elector is determined by his registration.

Section 83 provides:

"No elector shall, at any primary election held in this state, vote the ballot of any political party of which he is not a member, or with which he does not affiliate, and at any such primary election any elector may be challenged on that ground, and when so challenged no such elector shall be permitted to vote at any such primary election unless and until he shall first subscribe and swear to an oath that he is a member of, and does affiliate with, the political party in whose primary election he seeks to vote."

Section 165 uses the terms "registered voters of the political party" and "registered as members of the political party." Several sections use the terms · "member of" and "affiliated with" a political party. Section 162 uses the term "members of same party to which the applicant belongs." Section 233 provides for filling vacancies, and provides that no candidate shall be nominated to fill a vacancy on the ticket "who has changed his party affiliations by changing his registration from one party to another" within a limited period therein stated, thus making party affiliations depend upon registration.

At the outset, it is to be observed that our election laws are, in general, based upon the party system of government, and that only the members of

each political party have the right to nominate its candidates and that the candidates must be chosen from among the members of the party, to the end that, in the general election, the people may have a choice between candidates who are members of different political parties or who are independent candidates. In this respect, our election laws differ from those of California and perhaps other states.

Appellant contends that a member of one political party may not protest the candidacy of an elector in the primary election of any other political party, and that consequently the county election board was without authority to to sustain the protest filed by Haymes. It is true that the protest was not signed by ten Republican registered voters as provided in section 165. However, the provisions of section 165, that the protest shall be signed by a certain number of registered voters of the political party in which the filing has been made, apply only to cases where it is claimed the filing is "frivolous" or "not made in good faith." Section 165a makes it the duty of the election boards "to hear and determine all questions and objections that may arise" concerning notifications and declarations to become candidates at primary elections, and authorizes the election boards to strike any filing that "is frivolous or not made in good faith, or is fraudulent or contrary to law." The election boards have the right to pass upon any protest on the ground the filing is "contrary to law," and the protestant need not be a member of the same political party as the one seeking to become a candidate. And mandamus will not lie to compel the election board to place on the ballot the name of a candidate whose filing is "contrary to law."

Appellant argues that these statutory provisions do not prohibit him from becoming a Republican candidate, while the election board argues that, when they are properly construed, the Legislature intended them .to have that effect. We agree with the contention of the election board and the judgment of the trial court on this question. It was the intention of the Legislature that membership of a registered voter in a political party was to be determined by his registration in determining his eligibility to become a candidate for a party nomination. The right given to an elector to become a candidate on the ballot of his "party" under section 162, above, excludes, by necessary implication, his right to become a candidate of another party, under the doctrine of expressio unius est exclusio alterius. 25 R. C. L. 981, §229.

Appellant argues that the provision of section 83, above, giving an elector the right to vote, though not registered, by making an affidavit, excludes the idea that membership in a political party is to be determined solely by the registration of the elector. When sections 72 and 83, above, are construed together and harmonized, we think section 83 does not give an elector a right to vote in a party primary other than in the party of his registration. Likewise, section 123 does not, as argued by appellant, give an unregistered elector the right to vote in a party primary.

Appellant relies strongly upon Swindall v. State Election Board, 168 Okla. 97, 32 P. 2d 691. The case is not in point. However, it recognizes the right of the Legislature to regulate primary elections and political parties and the manner by which candidates may have their names placed on primary and general election ballots.

The case of Dove v. Oglesby, 114 Okla. 144, 244 P. 798, cited by appellant, holding unconstitutional the preferential primary law, is not in point. It deals with rights of electors in voting, not with the question as to who may become a party candidate.

The appellant also calls our attention to Hart v. Jordan, 168 Cal. 321, 143 P. 537, Sutphen v. Enking, 39 Idaho, 728, 230 P. 38, Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121, and Bell v. Hill, 123 Tex. 531, 74 S. W. 2d 113. We do not find these cases in point, as they do

472

not involve statutes similar to our statutes. In the first two, the statutes of California and Idaho were construed to give electors the right to become candidates of different political parties. The Morrow Case involves the constitutionality of the primary law, and recognized the right of the Legislature to reasonably regulate the naming of candidates by political parties. The Bell Case recognizes the right of a political party, in the absence of statutes or constitutional provision to the contrary, to prescribe the qualification for membership in the party and who may vote in the party primary.

Appellant refers to sections 5, 6, and 7 of article 3 of the State Constitution, but he does not point out wherein he is being denied rights guaranteed by those sections. Section 4 of article 3 specificially confers upon the Legislature the right to "provide the time and manner of holding and conducting all elections." Section 5 of article 3 makes it the duty of the Legislature to "enact laws providing for a mandatory primary system, which shall provide for nomination of all candidates in all elections for state, district, county, and municipal officers for all political parties.

We therefore hold that Darst did not have the legal right to compel the county election board to place his name on the ballot as a Republican candidate, that it was not the plain legal duty of the election board to do so, and that the trial court properly refused to issue a peremptory writ of mandamus requiring it.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and OSBORN, WELCH, DAVISON, and ARNOLD, JJ., concur. RILEY, J., dissents.